UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,                           12 Cr. 414 (RWS)

                                                        OPINION
    -against-


MORRIS EVANS

                Defendant.

------------------------------------------X

A P P E A R A N C E S:

    Attorney for the Government

    PREET BHARARA
    United States Attorney for the
    Southern District of New York
    One St. Andrew's Plaza
    New York, New York 10007
    By:  Ian Patrick McGinley


    Attorney for the Defendant

    FEDERAL DEFENDERS OF NEW YORK
    52 Duane Street
    10th Floor
    New York, NY 10007
    By:  Christopher Flood

**Sweet, D.J.**

On February 1, 2012, Defendant Morris Evans ("Evans" or the "Defendant") was arrested after New York City Police ("NYPD") Officers questioned him and searched his vehicle, recovering two firearms and a bag of marijuana. Defendant has been charged with possession of a firearm following conviction of a felony offense, in violation of 18 U.S.C. § 922(g)(1).

Defendant has moved to suppress tangible and statement evidence seized from his vehicle in connection with his arrest on February 1, 2012, on the ground that the police officers lacked lawful cause to seize and conduct the search. Defendant also seeks to suppress his pre-<u>Miranda</u> statements to police because the statements were the product of custodial interrogation.

Based upon the facts and conclusions set forth below, the motion is denied.

I. **Facts and Prior Proceedings**

The following facts are drawn from the Complaint and the parties' submissions and are not in dispute except as noted below.

On February 1, 2012, three NYPD officers were on patrol in a marked police vehicle in the Bronx. (Complaint ¶ 4). Officer-1 was driving the vehicle. (Id.). As the Officers drove down Andrews Avenue, Officer-1 saw the Defendant's car doubled parked with two individuals inside. (Id.). When the Officers approached the car, Officer-1 allegedly noticed that the front passenger's side window was down and stated that he detected a strong odor of marijuana coming from the car. (Id.).

Officer-1 then stopped the police vehicle and walked over to the front passenger's side of the car, where a female ("Individual-1") was sitting. (Id.). Officer-2 walked over to the driver's side of the car, where a man later identified as the Defendant, was sitting. (Id. ¶ 5).

As Officer-2 approached the driver's side of the car, he reported that he smelled marijuana. Officer-2 allegedly asked the Defendant why the car smelled of marijuana and he relayed that he had "just smoked" earlier. (Id.). Officer-2

3

asked the Defendant for his license and registration. (Id.). According to the Complaint, the Defendant did not immediately comply with Officer-2's request and instead appeared to be reaching down toward the center console of the car. (Id.). Officer-2 asked the Defendant and Individual-1 to get out of the car and placed the Defendant, who was not under arrest at that time, at the rear of the car facing it. (Id.).

While Officer-2 took the Defendant to the back of the car and while Defendant's back was to them, Officer-1 and Officer-3 searched the interior of the car. (Id. ¶ 4). When Officer-1 opened the car's glove compartment, he allegedly saw a black handgun. (Id.). According to the Complaint, immediately after Officer-1 opened the glove compartment, the Defendant allegedly fled the scene on foot. (Id.). A chase ensued and the Defendant was ultimately subdued by Officer-1 and Officer-2. (Id.). Defendant was subsequently arrested.

According to the Complaint, the officers recovered two handguns and one zip-lock bag containing a dried, green leafy substance that appeared to be marijuana from inside the glove compartment. (Id.). Defendant was subsequently arrested at the

4

police station. (Id.). Individual-1 denied knowing anything about the firearms recovered from the vehicle. (Id.).

According to the Defendant, he "was not engaged in any activity that would bring suspicion on me, nor did I see any suspicious behavior from anyone else." (Evans Decl. ¶ 4). In addition, the Defendant states that "[t]he passenger side window of the car I was sitting in when taken into custody does not work. It is stuck in the up position and does not come down." (Id.).

On August 22, 2012, Defendant's counsel and an investigator, along with the assigned Assistant United States Attorney and a federal investigator, inspected the Defendant's vehicle at the impound yard where it had been stored since the Defendant's arrest. The inspection revealed that the vehicle's window mechanism was not functional at the time of the February 1, 2012 encounter and had been stuck in the closed position. (Decl. of Christopher Flood ¶ 6).

On March 16, 2012, the Defendant was charged by complaint with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). Having previously been

charged by New York State, the Defendant was brought into federal custody on April 2, 2012 and indicted on May 22, 2012 on the same charge.

On September 7, 2012, the Defendant filed a pre-trial motion to suppress tangible and statement evidence, which was heard and marked fully submitted on October 3, 2012.

II. **Discussion**

**Legal Standard**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Whren v. United States, 517 U.S. 806, 809, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (citations omitted). A vehicle stop is a seizure of both the driver and all passengers. Brendlin v. California, 551 U.S. 249, 255-57, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Accordingly, a

vehicle stop is constitutionally permissible under the Fourth Amendment only if there is "probably cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." United States v. Harrison, 606 F.3d 42, 45 (2d Cir. 2010) (citation and internal quotation marks omitted).

"Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004); see also California v. Acevedo, 500 U.S. 565, 580, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991) (stating that "[w]e therefore . . . provid[e] one rule to govern all automobile searches. The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). "The scope of such a search may be broad as if a warrant had been obtained and extends to all parts of the vehicle and any closed containers within the vehicle." United States v. Rollack, 90 F. Supp. 2d 263, 269 (S.D.N.Y. 1999).

Probable cause to conduct a warrantless search of an automobile exists if, based on the totality of the circumstances, the police officers performing the search had "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." United States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007). The automobile exception to the Fourth Amendment's warrant exception extends "[e]ven in cases where an automobile was not immediately mobile. . . ." Howard, 489 U.S. 494. In addition, the odor of marijuana coming from a vehicle can establish probable cause. See United States v. Jackson, 652 F.2d 244, 252, n.6 (2d Cir. 1981).

Probable cause "is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband." Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983) (citation and internal quotation marks omitted). "The standard does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." Gaskin, 364 F.3d at 456.

## The Evidence Recovered From the Defendant's Vehicle Is Admissible

The Defendant argues that the evidence recovered from his car should be suppressed because the police officers lacked lawful authority to seize the Defendant or to conduct a search of his vehicle. The Defendant contends that the officers "were not in possession of objective facts that could amount to sufficient cause for a seizure of [the Defendant] or the search of his car" as there was "no indication that the officers were responding to a complaint or tip that illegal activity was afoot." (Def. Memo. at 3-4). Defendant also argues that "[c]onsidering the officers' demonstrably false statements justifying their conduct, there is scant basis to credit their claims regarding the circumstances or conduct of the search." (Id.).

The Complaint noted that Officer-1 smelled marijuana when he drove the police vehicle alongside the Defendant's double-parked car. While the Complaint alleges that the Defendant's car had the front passenger's side window down, the Defendant's counsel reported that an inspection of the car revealed that the window had been stuck in the closed position for some time prior to the February 1, 2012 encounter. (Def.

Memo. at 2). Even assuming that that the window was closed, and even assuming that Officer-1's statements were inaccurate, Officer-2's statement alone establishes probable cause.

As stated in the Complaint, Officer-2 approached the driver's side of the Defendant's car and smelled marijuana coming from the car. (Complaint ¶ 5). Moreover, when Officer-2 asked the Defendant why the car smelled of marijuana, the Defendant replied that he had "just smoked." (Id.). Based on the facts set forth by Officer-2 alone, the police officers had probable cause to search the Defendant's car.

In addition, the Defendant argues that he was effectively seized when he was removed from his vehicle. However, because Officer-2 noticed the smell of marijuana, conversed with the Defendant and observed the Defendant reaching down to the center console prior to ordering the Defendant out of the car, there was credible evidence sufficient to justify the officers' conduct.

**The Pre-Miranda Statements Were Not the Product of Custodial Interrogation**

The Defendant argues that the police officers did not inform him of his Miranda rights prior to their custodial interrogation, pursuant to Miranda v. Arizona, 384 U.S. 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). (Def. Motion at 5). Defendant contends that any statements he made "were the result of this custodial interrogation, and must therefore be suppressed as taken in violation of his Fifth Amendment rights." (Id.).

It is well-settled that Miranda warnings are not required unless law enforcement agents interrogate a person who is in custody. See Miranda, 3 84 U.S. at 444. "The test used in determining whether a defendant was in custody is an objective one." United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir. 1995). As framed by the Second Circuit,

> [c]ustodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

United States v. Rodriguez, 356 F.3d 254, 258 (2d Cir. 2004). Additionally, routine traffic stops generally do not constitute custodial settings. See Berkemer v. McCarty, 468 U.S. 420, 440-42 (1984) (stating that the "noncoercive aspects of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda."); United States v. Newton, 369 F.3d 659, 669 (2d Cir. 2004) (acknowledging the holding in Berkemer that routine traffic stops do not constitute custodial detentions for purposes of Miranda. In addition, the Supreme Court in Miranda highlighted that,

> Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

Miranda, 440 U.S. at 478.

Here, the Defendant argues that the officers did not inform him of his Miranda rights prior to the custodial interrogation and therefore "[a]ny statements made by [the

12

Defendant] were the result of his custodial interrogation, and must therefore be suppressed as taken in violation of his Fifth Amendment rights." (Def. Memo. at 5). However, the Defendant has not asserted that he was subjected to questioning by the police on February 1, 2012 nor has he alleged with any particularity that he was subjected to custodial interrogation before his arrest.

The Defendant's car was double-parked when the officers approached, in violation of the traffic laws. (Complaint ¶ 4). The Defendant was inside his own car when Officer-2 asked why the vehicle contained the smell of marijuana, to which the Defendant freely answered that he had "just smoked." (Id. ¶ 5). Officer-2's question did not convey the threat of arrest, especially as there is no allegation that the officers drew their weapons or demonstrated any police force. See United States v. Williams, 2008 WL 4516234, at *6 (W.D.N.Y. Oct. 2, 2008) (holding that the defendant was not in custody when he was questioned by law enforcement while the defendant remained in his own car). The Defendant's statements here were part of a voluntary and consensual conversation with the police officers. Accordingly, the Defendant was not in

13

custody when he was questioned by Officer-2 while he remained in his car.

**Conclusion**

Based upon the conclusions set forth above, Defendant's pre-trial motion to suppress tangible and statement evidence is denied.

It is so ordered.

**New York, NY**
**November 19, 2012**

_____
ROBERT W. SWEET
U.S.D.J.