UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

MORRIS EVANS,

                    Defendant.

------------------------------------X

12 Cr. 414 (RWS)

SENTENCING OPINION



**Sweet, D.J.**

On April 22, 2013, Morris Evans ("Evans" or the "Defendant") pleaded guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, Evans will be sentenced to 57 months' imprisonment to be followed by three years' supervised release. Evans will be required to pay a special assessment of $100.

**Prior Proceedings**

On February 1, 2012, Evans was named in a one-count Indictment 12 CR 414 (RWS) filed in the Southern District of New York. Count 1 charges that in the Southern District of New

1

York, Evans, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, possessed an Arcadia Machine & Tool .45 caliber pistol, a Hi-Point .45 caliber pistol and four rounds of .45 caliber ammunition manufactured by Winchester, all of which previously had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

On April 22, 2013, the Defendant appeared before the Honorable Debra C. Freeman in the Southern District of New York and pleaded guilty to the above charge.

Evans's sentencing is scheduled for October 10, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Evans's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

On August 6, 2004, Evans was convicted in New York State Supreme Court, Bronx County, of Robbery in the First Degree, a felony, in violation of New York Penal Law Section 160.15[4].

On February 1, 2012, three NYPD police officers, including Officer-1 (collectively, the "Officers"), were on

4

patrol in a marked police vehicle in the Bronx. Officer-1 was driving.

As the Officers drove down Andrews Avenue, Officer-1 saw a car (the "Car") double-parked with two individuals inside. When the Officers reached the Car, Officer-1 noticed that the front passenger's side window was down. Officer-1 smelled a strong odor of marijuana coming from the Car. Officer-1 stopped the police vehicle and walked over to the front passenger's side of the Car, where a female (Individual-1) was sitting. Officer-2 walked over to the driver's side of the Car, where a man later identified as Evans was sitting. Officer-2 asked Evans why the Car smelled of marijuana. Evans replied that he had "just smoked" earlier.

Individual-1 and Evans were ordered out of the Car. Officer-2 took Evans to the back of the Car, while Officer-1 and Officer-3 searched the interior of the Car. Evans was facing the Car at the time of this search.

When Officer-1 opened the Car's glove compartment, he saw what appeared to be a black handgun. Immediately after Officer-1 opened the glove compartment, Evans took off running. A chase ensued and Evans was ultimately subdued by Officer-1 and

5

Officer-2 and then arrested.

From inside the glove compartment, the Officers recovered two handguns and one zip-lock bag containing a dried, green leafy substance that appeared to be marijuana.

Individual-1 told Officer-1 that her child lived on Andrews Avenue, and that Individual-1 was there to pick up her child. Individual-1 was not arrested at the scene, but was subsequently arrested at the police station. When Evans saw Individual-1 at the police station, Evans stated to Officer-1, "She had nothing to do with it." Individual-1 denied knowing anything about the firearms recovered from the glove compartment.

Based on information obtained from the New York state Department of Motor Vehicles, the Car is registered in the name "Morris S. Evans."

Of the two firearms recovered in connection with the arrest of Evans, one of the firearms is a .45 caliber pistol manufactured by Arcadia Machine & Tool (Firearm-1), and the other firearm is a .45 caliber pistol manufactured by Hi-Point (Firearm-2). Firearm-1 was loaded with at least one round of

6

ammunition manufactured by Winchester, and Firearm-2 was loaded with at least three rounds of ammunition manufactured by Winchester. Firearm-2 had an altered serial number.

Neither Firearm-1 nor Firearm-2 was manufactured in the State of New York. The ammunition found in Firearm-1 and Firearm-2 was not manufactured in the State of New York.

**The Relevant Statutory Provisions**

For Count 1, the maximum term of imprisonment is 10 years pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

For Count 1, if a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years pursuant to 18 U.S.C. § 3583(b)(2).

For Count 1, Defendant is eligible for probation of not less than one or more than five years pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution or community service, pursuant to 18 U.S.C. § 3563(a)(2).

For Count 1, the maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2012 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility and term of imprisonment:

The guideline for a violation of 18 U.S.C. § 922(g) is found in § 2K2.1. Since the Defendant was previously convicted of a felony crime of violence, the base offense level is 20, pursuant to § 2K2.1(a)(4)(A).

Because one of the firearms had an altered or obliterated serial number, pursuant to § 2K2.1(b)(4)(B), the offense level is increased by four levels.

Based solely on the Defendant's plea allocution, the Defendant has shown recognition of responsibility for the

8

offense. Because of the Defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to § 3E1.1(a) and (b), the offense is reduced three levels.

Accordingly, the applicable offense level is 21.

As outlined below, the Defendant has four criminal convictions.

On December 8, 1999, the Defendant pled guilty to Attempted Assault in the 3rd Degree in Bronx Criminal Court in Bronx, NY. Defendant was adjudicated as a youthful offender after the plea and was sentenced to one year probation. On March 2, 2001, Evans was discharged. Pursuant to § 4A1.2(e)(3), this conviction warrants zero criminal history points.

On April 23, 2001, Evans broke the windows of the house located at 161 West 165th Street, Bronx, NY. On March 8, 2003, the Defendant pled guilty to Harassment in the 2nd Degree in the Bronx Criminal Court in Bronx, NY. Evans was sentenced to conditional discharge. In U.S. v. Morales, 239 F.3d 113 (2nd Cir. 2000), the Court of Appeals determined that a conviction

for Harassment in the Second Degree was not clearly more serious than the offenses listed in 4A1.2(c)(1). Pursuant to § 4A1.2(c)(1), this conviction warrants zero criminal history points.

On December 19, 2002, the Defendant pled guilty to Criminal Possession of a Controlled Substance in the 7th Degree in the New York Criminal Court in New York, NY. On February 14, 2003, Evans received 3 years' probation. The Defendant was discharged from probation on December 8, 2004. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On July 1, 2003, in the vicinity of Bronxwood and Waring Avenue in the Bronx, Evans and co-defendant approached a female victim, displayed what appeared to a handgun and told the victim to "Give us everything." He stole a gold necklace with an aggregate value in excess of $1,000 and a cell phone.

On July 3, 2003, in front of 2255 Bronxwood Avenue Evans and his co-defendant approached male victims, displayed what appeared to be a handgun and stated "Give us everything." Evans and co-defendant stole a pair of glasses from a male victim's head and a wristwatch from another male victim's wrist.

On July 8, 2003, at Fish and Givan Avenue a police officer was operating a 1999 Acura. Evans, in concert with another, struck the officers vehicle in the rear. Evans's co-defendant was operating the motor vehicle and Evans was in the passenger's seat. Evans then exited the vehicle and approached the officer and stated "Don't call the police, get on the ground," produced what appeared to be a handgun and aimed it at the officer. Evans's co-defendant then proceeded to enter and drive away the officer's car.

On August 6, 2004, Evans pled guilty to Robbery in the 1st Degree in the Bronx Supreme Court in Bronx, NY. On September 8, 2004, Evans was sentenced to 78 months' imprisonment and 5 years' post release supervision. The Defendant was paroled on November 6, 2009. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On November 4, 2006, at Riverview Correctional facility, Evans was found in possession of 36 grams of marijuana. On January 28, 2008, Evans pled guilty to Introducing Contra Band into Prison in the 2nd Degree in the St. Lawrence County Court in Canton, NY. The Defendant was

11

sentenced to 89 days' imprisonment. Pursuant to §§ 4A1.1(b) and 4A1.2(e)(1), this conviction warrants two criminal history points.

The criminal convictions above result in a subtotal criminal history score of six.

At the time the instant offense was committed, the Defendant was on parole for his conviction of Robbery in the 1st Degree. Pursuant to § 4A1.1(d), two points are added to Evans's criminal history score.

The total of the criminal history points is eight. According to the sentencing table at Chapter 5, Part A, eight criminal history points establish a Criminal History Category of IV.

Based on a total offense level of 21 and a Criminal History Category of IV, the guideline range for imprisonment is 57 to 71 months.

The guideline range for a term of supervised release is at least one year but not more than three years, pursuant to § 5D1.2(a)(2). If a sentence of imprisonment of one year or

less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Because the applicable guideline range is in Zone D of the Sentencing Table, the Defendant is not eligible for probation, pursuant to § 5B1.1, application note #2.

The fine range for the instant offense is from $7,500 to $75,000 pursuant to §§ 5E1.2(c)(3)(A) and (B). Subject to the Defendant's ability to pay, in imposing a fine the Court shall consider the expected costs to the Government of any imprisonment, probation or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision and a monthly cost of $2,244.17 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court

13

also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Evans will be sentenced to 57 months' imprisonment to be followed by three years' supervised release.

As mandatory conditions of his supervised release: (1) Evans shall not commit another federal, state or local crime; (2) Evans shall not illegally possess a controlled substance; (3) Evans shall not possess a firearm or destructive device; (4) the mandatory drug testing condition is suspended

14

due to imposition of a special condition requiring drug treatment and testing; and (5) Evans shall cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

(2) The Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be

conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

Evans is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Evans be supervised by the district of his residence.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 10, 2013.

It is so ordered.

New York, NY
October 8, 2013

ROBERT W. SWEET
U.S.D.J.